FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 27 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

NAPOLEON CHERRY,

                Plaintiff,

-against-

ANNETTE YVONNE ALDERMAN,
ATTORNEY RICHARD MINTON,
ATTORNEY SOL NAIMARK, and
NEW WORLD ABSTRACT TITLE CO.

                Defendants.

----------------------------------------X

**REPORT AND RECOMMENDATION**
**08 CV 4035 (ENV)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff Napoleon Cherry brings this *pro se* diversity action alleging that he is entitled to additional proceeds from the sale of his deceased uncle's property. Defendants Alderman and Minton move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Eric N. Vitaliano referred defendants' motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendants' motions for summary judgment should be granted.

## BACKGROUND

Apparently, plaintiff was called upon to care for his sick uncle, Benjamin Garner, when no one else stepped up to manage his care. Plaintiff states that when Garner was to be "transfered to rehablitaion center at Veterns Hospital in Queens no one came so I did because Uncle Benny were a good guy and all of us respected him I lost my father when I were fourteen Uncle Benny and Aunt Mary had us over their every holiday and for the hold summer." (Docket

1

entry 24, p. 2.[1]) (spelling as in original) On September 6, 2005, Garner signed a Durable General Power of Attorney giving power of attorney to plaintiff. (Docket entry 1, Compl., pp. 29-31; docket entry 59, Alderman Aff. at Ex. C.) Plaintiff alleges that defendant Alderman had a strained relationship with her father and "[w]hile Benjamin Garner were in Veterans Home in St. Albans, NY he asked me Napoleon Cherry to take the house out of his name take poss[ess]ion of the property while afraid for his life told me that his daughter Annette Yvonne Alderman wouldn't stop until she had his home and money." (Compl., p. 2.) (spelling as in original) On September 16, 2005, plaintiff conveyed his uncle's property located at 134-45 155th Street, Jamaica, New York, 11434 (the "Property") from Garner to himself using the power of attorney.[2] (Alderman Aff. at Ex. F.) On November 1, 2005, defendant Minton informed plaintiff's former attorney, defendant Sol Naimark, that Garner had retained him to revoke the power of attorney and that neither Garner nor Garner's family wished to sell the Property. (Id. at Ex. D.) Garner died on November 17, 2005. (Id. at Ex. H.) Garner died without a will and defendant Alderman was his only child, sole heir, and distributee, as Garner's wife had predeceased him.[3] (Alderman Aff., ¶ 8.)

On November 21, 2005, plaintiff entered into a contract with Euston O'Hara for the sale of the Property for $360,000. (Alderman Aff. at Ex. G.) The contract provided for a down payment of $10,000 to be held in escrow and the balance to be paid at closing. (Id.) By letter dated November 21, 2005, defendant Alderman stated that she consented to plaintiff's sale of the Property. (Compl., p. 25.) However, in February 2006, defendant Minton contacted defendant Naimark on defendant Alderman's behalf and informed him that "any letter of authorization that

---

[1] The Court references the ECF page numbers listed on the top of each page.
[2] The deed was recorded with the Office of the City Register on January 26, 2006. (Compl., p. 40.)
[3] Plaintiff attaches the will of Mary Garner, Benjamin Garner's wife, dated March 4, 1986 to his complaint. (Compl., pp. 5-9.) This will leaves Benjamin Garner a life estate in the Property and refers to three sons. Although not explained in any document, plaintiff states that "the will prepared by Sol Naimark for my aunt Mary Lee Garner in 1986 were not honored at closing." (Id. at p. 2.)

Mrs. Alderman has signed previously is no longer effective" and that "no sale of the above premises is to take place until I, as attorney for Annette Alderman, have approved the sale." (Alderman Aff. at Ex. I; Alderman Aff., ¶¶ 5-8.) Defendant Minton and defendant Naimark then entered into negotiations regarding the Property and reached an agreement to avoid litigation to void the deed and subsequent contract of sale. (Id. at ¶ 9.) The parties agreed that plaintiff would receive fifteen percent of the net proceeds from the sale of the Property in consideration for amending the contract of sale with O'Hara and for the services plaintiff provided to Garner while he was in a nursing home. (Id.)

On February 7, 2006, plaintiff signed an amendment to the contract of sale for the Property, reflecting the correct name of the seller as "Napoleon Cherry as nominee for Annette Yvonne Alderman, sole distributee of Benjamin Garner, deceased." (Alderman Aff. at Ex. J.) The amendment to the contract was also signed by O'Hara. (Alderman Aff., ¶ 9.) On the same date, plaintiff and defendant Alderman entered into the following agreement:

> WHEREAS, Napoleon has entered into a contract for the sale of premises 134-45 155th Street, Jamaica, NY 11434 for the benefit of the sole distributee of Benjamin Garner, deceased, to wit, Annette Yvonne Alderman, and
>
> WHEREAS, Napoleon has performed valuable services for said distributee in connection with the death of Benjamin Garner and the care of his property.
>
> NOW, THEREFORE, it is mutually agreed as follows:
>
> 1. At closing of sale, Richard Minton, as attorney for Annette, shall receive all of the proceeds of the sale in escrow. Out of the proceeds of the sale, the expenses of sale will be paid including brokerage commissions and title expenses.
>
> 2. Out of the aforesaid net proceeds, after the payment of the above expenses, Napoleon will receive fifteen (15%) percent of the net proceeds. Said payment may be made by attorney escrow check.
>
> 3. Napoleon will be responsible for all bills of Benjamin Garner that he has paid, including the funeral bill, without reimbursement from the estate, and he will

> be responsible for all obligations of Benjamin Gardner [sic], deceased, which he has signed for without reimbursement from the estate.

(Alderman Aff. at Ex. K.) On March 8, 2006, defendant Naimark, confirmed with defendant Minton that plaintiff would receive a check at closing for "15% of the proceeds available after deduction for [expenses]." (Id. at Ex. L.) Defendant Naimark further stated that "[t]he check to my client will be further subtracted by the $10,000.00 that I am holding in escrow. This $10,000.00 shall be for my clients [sic] benefit." (Id.)

The closing of the sale of the Property occurred on March 9, 2006. (Alderman Aff., ¶ 11.) On that date, defendant "Alderman, as sole distributee of Benjamin Garner, deceased, and Napoleon Cherry, individually," conveyed the Property to O'Hara.[4] (Compl., p. 34.) The deed was signed by plaintiff and defendant Alderman. (Id.) The closing statement for the Property reflects that plaintiff was present at the closing along with his attorney and states that defendant Minton issued:

> Check No. 1230 in the sum of $38,664 payable to Napoleon Cherry as his fifteen percent of the net proceeds as agreed. The actual fifteen percent due to Napoleon Cherry was $49,414. However, Mr. Cherry's attorney, Sol Naimark was holding the down payment on contract in escrow, and this $10,000.00 was credited against the amount due to Napoleon Cherry. In addition, $750.00 was also deducted from Napoleon Cherry's monies as his one-half share of the housecleaning expense incurred by the Seller, thus leaving the net amount due to Napoleon Cherry of $38,664.00.

(Alderman Aff. at Ex. M.) Plaintiff received Check Number 1230 from defendant Minton, endorsed the check, and deposited $38,664. (Id. at Ex. N.) Plaintiff acknowledges that defendant Minton paid him $38,664. (Compl., p. 1.) However, plaintiff alleges that defendant Naimark only paid him $3,500 and kept the balance of the $10,000 down payment as fees for representing plaintiff. (Id.)

---

[4] The deed was recorded with the Office of the City Register on March 29, 2006. (Compl., p. 32.)

## PROCEDURAL HISTORY

Plaintiff commenced this *pro se* action against Annette Yvonne Alderman, Richard Minton, Sol Naimark, and New World Abstract Title Co. on October 2, 2008. (Docket entry 1.) Plaintiff asserts this Court's diversity jurisdiction under 28 U.S.C. § 1332.[5] Defendants Alderman, Minton, and Naimark answered the complaint. (Docket entries 5, 8, and 11.) Defendant Alderman asserted a counterclaim against plaintiff for breach of contract. (Docket entry 5, Alderman Ans., ¶¶ 12-15.) Plaintiff never answered the counterclaim. The summons for defendant New World Abstract Title Co. was returned unexecuted, as the company had gone out of business. (Docket entry 12.)

At the initial pretrial conference on December 10, 2008, plaintiff was given thirty days to consider whether to voluntarily withdraw this action. (Docket entry 10.) As the parties stated they had all the evidence they needed, the Court set the briefing schedule for defendants' motions for summary judgment. (Id.) On January 28, 2009, plaintiff voluntarily discontinued his claims against defendant Naimark. (Docket entry 13.) Defendants Minton and Alderman moved for summary judgment and plaintiff opposed defendants' motions. (Docket entries 22, 25, and 27.) On July 7, 2010, plaintiff requested that the Court transfer this case to the Eastern District of Pennsylvania, and on October 26, 2010, plaintiff sought to withdraw his complaint in

---

[5] Plaintiff alleges that he is a resident of New Jersey, defendant Alderman is a resident of North Carolina, defendants Minton and Naimark are residents of New York, and defendant New World Abstract Title Co. is located is New York. (Compl., p. 1.) The Court is mindful that federal diversity jurisdiction does not extend to "probate matters." In Marhsall v. Marshall, 547 U.S. 293 (2006), the Supreme Court defined the probate exception to federal diversity jurisdiction as follows:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311-12. Although plaintiff alleges that he is entitled to additional proceeds from defendant Alderman's sale of the Property, the Court does not construe plaintiff's complaint as alleging any claims that fall within the probate exception to diversity jurisdiction.

5

this Court without prejudice. (Docket entries 39 and 40.) The Court denied plaintiff's requests. (Docket entry 46.) On February 8, 2011, the Court terminated defendants' motions for summary judgment without prejudice because defendants failed to provide plaintiff with the requisite Notice to a Pro Se Litigant under Local Civil Rule 56.2. (Docket entry 48.) The Court then set the briefing schedule for defendants' renewed motions for summary judgment. (Id.)

When plaintiff did not timely receive defendants' motions for summary judgment, plaintiff requested that the Court enter a default against defendants. (Docket entries 55 and 56.) The Court denied plaintiff's request and directed plaintiff to oppose defendants' motions by March 28, 2011. (Docket entry 57.) Instead of opposing defendants' motions, plaintiff appealed to Judge Vitaliano. (Docket entry 58.) As plaintiff did not serve any opposition, defendants filed their motions for summary judgment on April 8, 2011.[6] (Docket entries 59 and 60.) On April 11, 2011, Judge Vitaliano denied plaintiff's appeal of the Court's Order denying plaintiff's motion for default. In an abundance of caution, the Court provided plaintiff one last chance to oppose defendants' motions. (Docket entry 61.) Instead of opposing defendants' motions, plaintiff filed an interlocutory appeal to the Second Circuit regarding the Court's April 11, 2011 Order. (Docket entry 62.) Despite plaintiff's interlocutory appeal, the Court retains jurisdiction over this action.[7] As plaintiff has not filed any opposition to defendants' motions, despite being

---

[6] Defendants provided plaintiff with the requisite Notice to a Pro Se Litigant pursuant to Local Civil Rule 56.2. (Docket entries 59.5 and 60-5.) Defendants also submitted statements of undisputed material facts pursuant to Local Civil Rule 56.1(a). (Docket entry 59, pp. 3-5; docket entry 60, pp. 3-5.) Plaintiff did not oppose defendants' motions or file a counter-statement under Local Rule 56.1(b). As such, the Court may deem the facts in defendants' Rule 56.1 statements admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statements of undisputed facts contained in the Rule 56.1 statements: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). Accordingly, the Court deems admitted only those facts in defendants' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record.

[7] An interlocutory order of a district court may only be appealed as provided by 28 U.S.C. § 1292. "Where, however, a notice of appeal has been filed from an order that is non-appealable, jurisdiction does not rest with the Court of Appeals but remains with the district court." Hoffenberg v. United States, 00 Civ. 1686 (RWS), 2004 U.S. Dist. LEXIS 20668, at *5 (S.D.N.Y. Oct. 21, 2004). As explained by the Second Circuit:

provided multiple chances to do so, defendants' motions for summary judgment shall be considered unopposed.

## DISCUSSSION

**I. Standard of Review**

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. Home

---

Whatever the superficial attractiveness of a per se rule that filing of a notice of appeal automatically divests the district court of jurisdiction as to matters covered by the notice, such a rule is subject to abuse, and our application of the divestiture rule must be faithful to the principle of judicial economy from which it springs. We fail to see any efficiency in allowing a party to halt district court proceedings arbitrarily by filing a plainly unauthorized notice of appeal which confers on this court the power to do nothing but dismiss the appeal.

United States v. Rodgers, 101 F.3d 247, 251-52 (2d Cir. 1996) (citing Leonhard v. United States, 633 F.2d 599, 610-11 (2d Cir. 1980)) (finding that defendant's "notice of appeal was premature, and therefore, was a nullity . . . [that] did not divest the district court of jurisdiction.); see Gortat v. Capala Bros., No. 07-CV-3629 (ILG)(SMG), 2008 U.S. Dist. LEXIS 102500, at *2-3 (E.D.N.Y. Dec. 18, 2008) ("A district court may ignore an appeal from a non-appealable order and proceed to exercise jurisdiction over a case.").

Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment). Even though plaintiff has not opposed defendants' motions for summary judgment, the facts are still viewed in the light most favorable to plaintiff.

However, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted)). Even though plaintiff has not opposed defendants' motions, the Court must still determine whether defendants are entitled to judgment as a matter of law. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically.").

## II. Plaintiff's Claims against Defendants Alderman and Minton

Plaintiff's claims against defendants Alderman and Minton are far from clear. Plaintiff's complaint consists of two pages of allegations and forty-nine pages of exhibits. Plaintiff alleges that by acquiring power of attorney, conveying the Property to himself, and contracting to sell the Property, he was abiding by his uncle's wishes, as Garner allegedly did not want the Property or his money to go to defendant Alderman. (Compl., p. 2.) Plaintiff states that although the deed to the Property was in his name, defendant Naimark had him sign an agreement for fifteen percent of the proceeds from the sale of the Property. (Id. at p. 1.) Plaintiff further alleges that the proceeds from the sale of the Property "were distributed in a[n] illegal man[ner]" and he is entitled to "receive [his] equal share that's due." (Id. at pp. 1-2.) However, plaintiff's complaint claims that he is entitled to $120,000, which amounts to one-third of the gross proceeds from the sale of the Property.[8] (Id. at p. 2.)

Liberally construing plaintiff's complaint, plaintiff alleges that defendants Minton and Alderman breached the February 7, 2006 contract by not paying him the proper amount of the

---

[8] As plaintiff seeks one-third of the gross proceeds from the sale of the Property, the Court does not construe the complaint as alleging that he was the sole owner of the Property and should have been entitled to all of the proceeds from the sale of the Property to O'Hara. Such a claim would sound in the tort of conversion. "A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 860 N.E.2d 713, 717 (2006). Although the tort of conversion does not apply to real property, a plaintiff may maintain a conversion claim based on the proceeds from a sale of real property. See Robert Smalls Inc. v. Hamilton, No. 09 Civ. 7171 (DAB)(JLC), 2010 U.S. Dist. LEXIS 83643, at *28 (S.D.N.Y. July 19, 2010) (finding that plaintiffs adequately stated a claim for conversion based on the proceeds from a sale of property); Asdourian v. Konstantin, 93 F. Supp. 2d 296, 299 (E.D.N.Y. 2000) (denying defendant's motion for judgment as a matter of law because "the conversion cause of action concerned the proceeds of the sale of properties and not the conversion of real property itself"). "When, in an action for conversion, the property in question is money, that money 'must be specifically identifiable and be subject to an obligation to be returned or to be otherwise treated in a particular manner.'" Robert Smalls Inc., 2010 U.S. Dist. LEXIS 83643, at *27 (quoting Key Bank of New York v. Grossi, 642 N.Y.S.2d 403, 405 (N.Y. App. Div. 1995)). In any event, while the February 7, 2006 contract does not explicitly release any claim plaintiff may have had to the Property, the contract does provide that plaintiff entered into a contract for the sale of the Property for the benefit of defendant Alderman and it unambiguously provides him fifteen percent of the net proceeds from the sale of the Property. (Alderman Aff. at Ex. K.) Moreover, on the same day, plaintiff signed the amendment to the contract of sale, which reflects that plaintiff sold the Property to O'Hara "as nominee" of defendant Alderman. (Id. at Ex. J.) Finally, the deed conveying the Property to O'Hara was signed by both plaintiff and defendant Alderman. (Compl., p. 34.) Plaintiff was represented by counsel throughout these transactions.

proceeds from the sale of the Property. "Under New York law, a plaintiff must prove four elements to prevail on a breach of contract claim: (1) the making of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract and (4) damages suffered by the plaintiff." Eastman Kodak Co. v. STWB Inc., 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). "New York law requires a contract to be enforced according to the plain meaning of its clear and unambiguous terms so as to give effect to the intent of the parties." Id. (citations omitted).

Even assuming that the February 7, 2006 agreement was an enforceable contract, plaintiff's breach of contract claim cannot withstand defendants' motions for summary judgment. As for plaintiff's claim against defendant Minton, it is well-established that "[a] contract cannot bind a non-party." D'Antonio v. Metro. Transp. Auth., No. 06 cv 4283 (KMW), 2008 U.S. Dist. LEXIS 16726, at *27 (S.D.N.Y. Mar. 4, 2008) (quoting Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1256 (S.D.N.Y. 1995));[9] see Underdog Trucking, LLC v. Verizon Servs. Corp., No. 09 Civ. 8918 (DLC), 2010 U.S. Dist. LEXIS 72642, at *10 (S.D.N.Y. July 20, 2010) ("Generally, one who is not a party to a contract cannot be held liable for breach of that contract.") (citations omitted); Crabtree v. Tristar Auto. Group, Inc., 776 F. Supp. 155, 166 (S.D.N.Y. 1991) ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract."). Here, plaintiff and defendant Alderman were the only parties to the February 7, 2006 agreement. Defendant Minton was not a party to the contract and served only as defendant Alderman's attorney. Accordingly, defendant Minton's motion for summary judgment should be granted on plaintiff's breach of contract claim.

---

[9] The Clerk of Court is directed to send plaintiff the attached copies of all unreported cases cited herein.

As for plaintiff's claim against defendant Alderman, the record reflects that defendant Alderman did not breach the contract. The contract provided that plaintiff would receive fifteen percent of the net proceeds from the sale of the Property, after deducting the expenses from the sale. (Alderman Aff. at Ex. K.) At the closing of the sale of the Property, defendant Alderman performed her obligations under the contract when her attorney issued plaintiff a check for $38,664. As reflected in the closing statement, the actual fifteen percent of the net proceeds from the $360,000 sale of the Property amounted to $49,414. (Alderman Aff. at Ex. M.) However, as plaintiff's attorney was holding the down payment on the sale in escrow, $10,000 was credited against the amount due to plaintiff. (Id.) Additionally, $750 was deducted as plaintiff's share of the cost of cleaning the Property. (Id.) The record reflects that plaintiff received, endorsed, and deposited the check for $38,664. (Alderman Aff. at Ex. N.) Indeed, in his complaint, plaintiff acknowledges that defendant Minton paid him $38,664 at closing. (Compl., p. 1.) Although in hindsight plaintiff may not be content with the amount of the proceeds provided to him under the terms of the February 7, 2006 agreement, even when viewed in the light most favorable to plaintiff, the instant record presents no genuine dispute as to whether defendant Alderman breached the contract. Accordingly, defendant Alderman's motion for summary judgment should be granted on plaintiff's breach of contract claim.[10]

---

[10] To the extent plaintiff asserts a claim of unjust enrichment against defendants Alderman and Minton, plaintiff's claim cannot withstand defendants' motions for summary judgment. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Isreal Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586-87 (2d Cir. 2006). "It is important to note, however, the nature of an unjust enrichment claim in New York: The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement.*" Id. (internal quotation marks and citation omitted). Therefore, as here, "when a 'valid and enforceable' written contract governs the subject matter in dispute, a plaintiff may not recover under a theory of unjust enrichment." Lexington Ins. Co. v. Tokio Marine & Nichido Fire Ins. Co. Ltd., No. 11 Civ. 391 (DAB), 2011 U.S. Dist. LEXIS 100801, at *7 (S.D.N.Y. Sept. 7, 2011) (quoting Beth Israel Med. Ctr., 448 F.3d at 587).

To the extent plaintiff alleges that defendants Alderman and Minton fraudulently induced him to enter into to the February 7, 2006 agreement, which provided him only fifteen percent of the proceeds from the sale of the Property, plaintiff's claim cannot withstand defendants' motions. To state a claim for fraud under New York law, a plaintiff must show that "1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." Kaye v. Grossman, 202 F.3d 611, 614 (2d Cir. 2000). "[U]nder New York law, where a fraud claim arises out of the same facts as a breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom Intern. Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) (internal quotation marks omitted). However, "if the allegedly false statements concern present facts rather than future intentions, those statements may form the basis for a fraud or fraudulent-inducement claim, as they sufficiently distinguish the fraud theory from the contract-breach claim." Quanzhou Joerga Fashion Co., Ltd. v. Brooks Fitch Apparel Group, LLC, No. 10 Civ. 9078 (VM)(MHD), 2011 U.S. Dist. LEXIS 92636, at *15 n.4 (S.D.N.Y. Aug. 11, 2011) (citations omitted).

The instant record does not reflect that defendants Alderman or Minton made any statements to plaintiff regarding the Property that they knew to be false. Defendants Alderman and Minton believed that the Property belonged to defendant Alderman as the sole distributee of Garner. (Alderman Aff., ¶ 8.) Although plaintiff may have been warned by Garner "to be carefull her and that lawyer [Alderman and Minton] won't stop until its over," plaintiff hired

Naimark and a deal was worked out with defendant Alderman to avoid litigation over the Property. (Compl., p. 2; Alderman Aff., ¶ 9.) Following a negotiation between defendant Minton and plaintiff's attorney, the parties agreed to amend the name of the seller on the contract of sale for the Property and to enter into a contract which provided plaintiff fifteen percent of the net proceeds from the sale of the Property. (Id. at ¶ 9; Ex. J and K.) Plaintiff fails to establish any fraud or fraudulent inducement by defendants. Accordingly, defendants' motions for summary judgment should be granted on any fraudulent inducement claim.

### III. Plaintiff's Claims against Defendant New World Abstract Title Co.

Plaintiff never filed proof that defendant New World Abstract Title Co. was served with the summons and complaint in this action. Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Plaintiff commenced this action on October 2, 2008 and the Court ordered plaintiff to serve all defendants with process by January 30, 2009. (Docket entries 1 and 4.) The Court explicitly warned plaintiff that "if service is not made upon the defendants by January 30, 2009 or plaintiff fails to show good cause why such service has not been effected, it will be recommended that the Court dismiss this action without prejudice." (Docket entry 4.) On December 3, 2008, plaintiff filed an unexecuted return of service for defendant New World Abstract Title Co. (Docket entry 12.) The process server states that he was unable to serve New

World Abstract Title Co. because the company went out of business. (Id.) Plaintiff made no other filing regarding service on this defendant. As plaintiff has failed to file proof of proper service on defendant New World Abstract Title Co., it is respectfully recommended that plaintiff's claims against this defendant should be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

## IV. Defendant Alderman's Counterclaim against Plaintiff

Defendant Alderman asserts a counterclaim for breach of contract against plaintiff. (Alderman Ans., ¶¶ 12-15.) Specifically, defendant Alderman claims that plaintiff breached the February 7, 2006 contract in which plaintiff agreed to pay Garner's unpaid bills. (Id. at ¶ 12.) Defendant Alderman alleges that, as a result of the breach, the nursing home where Garner stayed made a claim against his estate for $2,280.00 and defendant Alderman suffered damages in that amount. (Id. at ¶¶ 14-15.) Defendant Alderman did not move for summary judgment on this counterclaim.

Defendant Alderman's counterclaim is a compulsory counterclaim as it "arises out of the same transaction or occurrence that is the subject matter of [plaintiff's] claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). The Court does not have original jurisdiction over the state law counterclaim because the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332 is not satisfied. Rather, the Court has supplemental jurisdiction over the counterclaim under 28 U.S.C. § 1367(a). However, as the Court has recommended that all claims over which it had original jurisdiction under 28 U.S.C. § 1332 should be dismissed, the Court declines to exercise supplemental jurisdiction over defendant Alderman's counterclaim. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under

14

subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); Bazzicalupo v. Nationwide Ins. Co., No. 05 Civ. 5127 (MDF), 2006 U.S. Dist. LEXIS 31456, at *16 (S.D.N.Y. May 11, 2006) (declining to exercise supplemental jurisdiction over defendant's state law counterclaims after all claims over which the Court had diversity jurisdiction were dismissed on summary judgment). Accordingly, defendant Alderman's counterclaim should be dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendants' motions for summary judgment should be granted. It is further recommended that plaintiff's claims against defendant New World Abstract Title Co. should be dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure and that defendant Alderman's counterclaim for breach of contract should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/s/ 

LOIS BLOOM
United States Magistrate Judge

Dated: September 26, 2011
       Brooklyn, New York